Eric H. Gibbs (SBN 178658)
Elizabeth C. Pritzker (SBN 146267)
Dylan Hughes (SBN 209113)
Amy M. Zeman (SBN 273100)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone:  (415) 981-4800
Facsimile:  (415) 981-4846
E-mail:  ehg@girardgibbs.com
        ecp@girardgibbs.com
        dsh@girardgibbs.com
        amz@girardgibbs.com

Lead-Liaison Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: MUSICAL INSTRUMENTS AND EQUIPMENT ANTITRUST LITIGATION** | Case No. 09-md-02121-LAB-POR |
| _____ | MDL No. 2121 |
| | CLASS ACTION |
| This Document Relates To: | **JOINT DISCOVERY CONFERENCE STATEMENT** |
| ALL ACTIONS | **DISCOVERY MATTER** |
| | Date:  December 22, 2011 |
| | Time:  10:00 a.m. |
| | Judge:  Hon. Louisa S. Porter |
| _____ | |

The parties file this joint discovery motion seeking the Court's guidance on three discovery disputes concerning: (1) the deadline to complete limited discovery; (2) the key words used to conduct searches for responsive electronically-stored information ("ESI") in Defendants' possession, custody or control; and (3) the production of minimum advertised price ("MAP") policies.  The first two issues are global issues affecting all aspects of the parties' limited discovery efforts, while the third issue relates to a specific request for production of documents made to each Defendant.

Defendants respectfully request a hearing before the Court regarding these issues.  Defendants believe a hearing is needed due to the variations among the defendants in their negotiated agreements with plaintiffs and their responses to plaintiffs' discovery requests.

**ISSUE NO. 1:**

Plaintiffs request that the deadline to complete limited discovery be extended from December 23, 2011, to February 1, 2012.

**DEFENDANTS' RESPONSE REGARDING ISSUE NO. 1:**

Defendants object to Plaintiffs' request to further extend the discovery deadline from December 23, 2011 to February 1, 2012  because it is unwarranted and is not based on good cause.

**PLAINTIFFS' REASONS THE DISCOVERY DEADLINE SHOULD BE EXTENDED:**

In the portion of the Court's Order on Defendants' motion to dismiss that provides for limited discovery, Judge Burns set February 1, 2012 as a proposed outside date by which such discovery should be completed.  (*See* Dkt. No. 45 at 13).   Given production delays that have occurred since the date the parties filed their stipulation to extend the original discovery deadline of December 1, 2011, Plaintiffs now request that the your Honor adopt February 1, 2012 as the deadline for completion of such limited discovery.  Plaintiffs' reasons for the reqeusted order are set forth below.

As detailed in Plaintiffs' accompanying memorandum, Plaintiffs have diligently pursued the discovery afforded by Judge Burns' order.  Plaintiffs drafted and served a limited set of interrogatories (5-6 per Defendant) and document requests (3-4 per Defendant) on October 5, 2011 – one day after the parties appeared before your Honor for an initial discovery conference.  Plaintiffs received Defendants' responses on November 7 and 8.  Defendants' responses illustrated a fundamental difference in opinion

between the parties regarding the scope of discovery permitted under Judge Burns' Order.  In an effort to resolve these differences, Plaintiffs engaged in over 13 meet and confer calls and over 30 e-mail exchanges with six different groups of defense attorneys.  As of November 23, 2011,  eight days from the original December 1, 2011 deadline, only three Defendants had produced document productions. The parties then stipulated to an extension of the discovery period to allow Defendants to promptly complete their document productions and permit Plaintiffs sufficient time to review the productions, identify deponents, and schedule and complete depositions of Defendants' record custodians and witnesses.

As detailed in Plaintiffs' accompanying memorandum, however, there were additional production delays that followed.  In light of these delays, Plaintiffs requested agreement to a further discovery extension, this time to the February 1, 2012 deadline outlined in Judge Burns' Order.  To achieve compliance with that deadline, Plaintiffs wrote to all Defendants and proposed that: (a) Defendants complete their document productions by December 9, 2011; (b) the parties meet and confer during the week of December 12, 2011 to schedule a targeted set of depositions that accommodate the various witness' schedules; and (c) the parties work cooperatively to schedule and complete depositions at mutually-convenient dates in December 2011 and January 2012.

At this point, Plaintiffs cannot reasonably review the late-arriving productions, analyze the interaction of all seven productions, effectively identify appropriate deponents, and schedule and complete meaningful depositions by December 23.  This is not a case in which each Defendants' document production stands distinct from and unaffected by all others' productions; rather, the limited discovery is aimed at uncovering meetings between Defendants, and thus the documents produced by each Defendant may inform Plaintiffs understanding of other Defendants' conduct.  Attempting to squeeze the necessary document review, scheduling, travel, and depositions into the eleven days between the last Defendant production and the current discovery deadline will not allow for an efficient or cost-effective discovery process and will not serve the interests of justice.

Plaintiffs have an additional good faith basis for requesting that the Court set February 1, 2012 as the discovery deadline for the limited discovery deadline, which was not apparent to Plaintiffs until this

morning.  In an effort to proceed as expeditiously as possible, Plaintiffs promptly scheduled and commenced the deposition of the first defense witness, Yamaha Corporation of America Senior Vice-President Tom Sumner for December 15, 2011.  A dispute arose about the scope of Judge Burns' order with respect to the discovery that may be obtained from Defendants regarding who attended or participated in meetings at the trade shows alleged in the amended consolidated complaint.  Defendants have collectively taken the position that the order permits discovery only of "private meetings" among one or more of the Defendants, and will not permit witness testimony beyond that.  The parties will meet and confer on this issue and contact the Court; if the Court requests, the parties will submit additional briefing on the issue at the Court's direction.  Setting the discovery deadline for February 1, 2011 – the outside date originally contemplated by Judge Burns' order – will enable the Court to resolve these issues before more depositions are scheduled.

Plaintiffs' requested extension is reasonable.  Rather than assess the completeness and impact of each Defendant's document production on the entirety of the discovery produced, Plaintiffs' alternative is to request depositions from most (if not all) of the 56 custodial witnesses identified by Defendants.  Plaintiffs do not believe that option comports with purpose of the federal rules, which is to maximize the efficiencies of the discovery process.  Extending the discovery deadline to February 1, 2012 – the outside deadline contemplated by Judge Burns' order – accomplishes these objectives, gives the parties a date certain by which to complete the limited discovery, and provides one deadline (rather than several) after which Plaintiffs may further amend their complaint in light of the discovery obtained.

**DEFENDANTS' BASIS FOR OBJECTING TO AN EXTENSION:**

Defendants oppose the extension of the discovery deadline requested by Plaintiffs.  While good cause for the granting of another extension is lacking with respect to all Defendants, it is especially lacking with regard to those Defendants who responded completely to Plaintiffs' discovery requests many weeks ago.  Defendants, however, do not object to Plaintiffs taking, after December 23, 2011, depositions that already have been noticed or otherwise specifically identified by Plaintiffs [i.e., as of December 14, 3pm], but for which the deponent is unavailable to appear prior to the December 23 deadline.

As described in more detail in Defendants' accompanying memorandum, Plaintiffs do not and cannot demonstrate the good cause required to justify their request for a further extension of the discovery deadline.  Plaintiffs were not diligent in pursuing discovery from Defendants and, in any event, have been in possession of Defendants' complete interrogatory answers as well as substantial document productions for many weeks prior to the December 23, 2011 discovery deadline.  Nevertheless, Plaintiffs failed to request their first deposition -- whether of an individual or a 30(b)(6) -- until December 9, 2011, and at the same time declared themselves unavailable to conduct depositions on almost half of the remaining business days between now and the December 23, 2011 discovery deadline.  Had the Plaintiffs been diligent in pursuing discovery against the Defendants, they would have had more than ample time to complete the deposition discovery they now seek to defer under their proposed 5-week extension period.

Plaintiffs' sole justification for the requested extension is their unsupported assertion that they could not begin an efficient deposition process until they received the last document from the last Defendant who produced documents. There is no legal basis for this position.  As Plaintiffs' acknowledge, they already were in possession of three of the Defendants' document productions, as well as interrogatory answers from all Defendants no later than November 23, 2011.  These responsive materials, as well as whatever investigation Plaintiffs conducted before filing their Complaint, provided more than a sufficient basis for Plaintiffs to identify at least a number of deponents, including representatives of the producing Defendants, and to complete their depositions prior to December 23, 2011.  Moreover, at any point in discovery, Plaintiffs could have served Rule 30(b)(6) notices requiring Defendants to produce knowledgeable corporate designees.  Furthermore, Plaintiffs would have received completed productions from all Defendants much sooner had Plaintiffs acted diligently after Judge Burns issued his August 22, 2011 Order permitting limited discovery or had Plaintiffs taken the opportunity to discuss search terms with Defendants when Defendants approached them to do so even before written discovery responses were due.  Plaintiffs should not be permitted to cure their own inaction by inflicting another five weeks of burdensome, costly, and distracting discovery on all of the Defendants.

As indicated above, however, Defendants do not object to Plaintiffs taking, after December 23, 2011, depositions that already have been noticed or otherwise identified by Plaintiffs, but for which the deponent is unavailable to appear prior to the December 23 deadline.

Finally, Mr. Sumner's deposition should be of no moment and should not affect any discovery deadline.  In an apparent effort to manufacture an excuse for the extension they seek, Plaintiffs purposefully exceeded the scope of Judge Burns' Order in the deposition.  First, when this dispute arose, rather than follow the Court's procedures and contact the Court during the deposition to obtain a resolution (when counsel for all parties were already available), Plaintiffs suspended the deposition and now seek to use their own conduct and their own choice not to delay seeking any resolution as a means to obtain an extension.  Second, as Plaintiffs admit, without a meet and confer the scope of this dispute remains unclear and is not ripe for consideration.  Third, the objections made with respect to Mr. Sumner's deposition, was that the questioning went beyond the scope of Judge Burns' order in asking general open-ended questions about MAP policies that had nothing to do with meetings with competitors, meetings with Guitar Center or meetings of any type what-so-ever.  Plaintiffs have not accurately represented the dispute and objections.  Plaintiffs were given an opportunity and encouraged to ask questions regarding all "meetings alleged in the amended complaint and what was said or agreed to there" (Dkt. No. 133 at 13) and they refused to continue.

**ISSUE NO. 2**

Plaintiffs request that each Defendant (1) identify abbreviations or acronyms commonly used within the Defendant corporation for any of the agreed-upon search terms, or affirmatively state that no abbreviations or acronyms are commonly used; (2) state whether the Defendant included all identified abbreviations and acronyms in its search for responsive documents; and (3) if abbreviations and acronyms were identified but not included in Defendant's search, re-run its search and produce new responsive documents.

**DEFENDANTS' RESPONSE REGARDING ISSUE NO. 2:**

Defendants object to this request because it is untimely, unduly burdensome, and inconsistent with the previously negotiated discovery responses.

5

**PLAINTIFFS' REASONS DEFENDANTS SHOULD IDENTIFY ABBREVIATIONS AND ACRONYMS AND RE-RUN DOCUMENT SEARCHES IF THESE WERE NOT USED:**

Despite Plaintiffs' requests, Defendants have been unwilling to provide adequate information about the source, location or form of potentially discoverable documents for Plaintiffs to make intelligent decisions about search terms.  In an effort to resolve disputes over the scope and burden of discovery, Plaintiffs nonetheless made a good faith effort to work with and modify the search terms proposed by Defendants, and the search protocols agreed to by November 23 included search terms discussed by the parties.

After reviewing initial document productions, it became clear that some Defendants use abbreviations and acronyms for some of the search terms agreed upon during the parties' meet and confer sessions.  Plaintiffs asked each of the Defendants to confirm that their searches included internal abbreviations or acronyms, such as "GC" for "Guitar Center" or "GMI" for "Gibson" (though the actual terms would vary depending on common usage within each Defendant).  Only one Defendant, NAMM, confirmed that it had included appropriate abbreviations and acronyms in its search protocol.  The other defendants stated they had searched only the precise terms agreed to in the meet and confer process and would not conduct additional searches.

A good faith search must recognize that effective search terms cannot be identified in an information vacuum and that a party's "human knowledge" should be utilized to craft keyword searches that are responsive to the "inherent malleability and ambiguity of spoken and written English."  See *The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery,* 8 Sedona Conf. J. 189, 201, 209 (2007).  Until Defendants started actually producing documents, Plaintiffs didn't know what abbreviations or acronyms each Defendant uses in referring to themselves, their divisions or each of the other Defendants.  In the course of the meet and confers, Defendants should have told Plaintiffs about the commonly used abbreviations and acronyms, and a good-faith search effort should have included them with the agreed-upon search term concepts.  *See In re Seroquel Products Liability Litigation*, 244 F.R.D. 650, 662 (M.D. Fla. 2007) ("[W]hile key word searching is a recognized method to winnow relevant documents from large repositories, use of this

JOINT DISCOVERY CONFERENCE STATEMENT
Case No. 09-md-02121-LAB-POR

1   technique must be a cooperative and informed process."); *In re Priceline.com Inc. Securities Litigation*,

2   233 F.R.D. 88, 91 (D. Conn. 2005) ("Defendants shall also seek input from plaintiffs regarding a

3   proposed search terms.  Plaintiffs may seek a court order directing a more inclusive search.")

4   **DEFENDANTS' BASIS FOR REFUSING TO IDENTIFY ABBREVIATIONS AND**

5   **ACRONYMS AND RE-RUN DOCUMENT SEARCHES IF THESE WERE NOT USED :**

6          The document requests served on Guitar Center and the manufacturing defendants

7   ("Defendants") all exceeded the scope of the limited discovery permitted by Judge Burns' order.

8   Nonetheless, before the due date for Defendants' discovery responses, defendants contacted Plaintiffs'

9   counsel and offered to voluntarily produce certain documents and offered to meet and confer regarding

10  search terms for Defendants' ESI.  On October 31 and November 1, 2011, plaintiffs wrote to the

11  respective Defendants to say that plaintiffs were declining Defendants' offers to meet and confer

12  regarding search terms, and that Defendants should craft suitable search terms on their own.

13          On November 3 and 4, each defendant (except for NAMM, whose discovery responses are not

14  presently at issue) sent a letter to counsel for Plaintiffs that detailed the specific searches they were

15  planning to run, which included variations on the key terms "MAP" and " NAMM."  In other words, the

16  original terms included the key terms likely to generate discoverable information about discussions of

17  MAP policies at NAMM events.  Even with the Defendants' proposed search terms in hand, Plaintiffs

18  did not request any additional search terms or raise any objections.

19          Weeks later, after several Defendants already had undertaken the substantial burden and expense

20  of reviewing documents—and after several of the Defendants had already substantially or fully

21  completed their productions—Plaintiffs contacted the Defendants to offer input regarding search terms

22  for the first time.  Defendants could have reasonably refused this belated effort by plaintiffs to revisit on

23  search terms in light of Plaintiffs' demand that Defendants craft search terms on their own.  Instead,

24  each defendant negotiated a specific agreement with plaintiffs to expand  the search terms that

25  Defendants had either already run or were I the process of running; this agreement to expand the terms

26  was  part of an overall agreement that resolved all outstanding disputes related to the scope and timing

27  of discovery.  In the individually-tailored agreements they reached with each defendant, Plaintiffs

28

specified a set of final search terms that defendants would run, which did not contain any abbreviations for the Defendants' company names—even though Plaintiffs had been in possession of documents produced by Defendants which indicated that abbreviations are used from time to time.  At Plaintiffs' request, several Defendants even agreed to amend their FRCP responses to specify the search terms that were agreed to and used as part of this resolution of all outstanding discovery disputes.  Defendants ran the terms through tens, if not hundreds, of thousands of documents.  The number of documents actually responsive under the parties' agreements represented a mere fraction of the documents searched—in some cases, less than 1% of the documents searched were responsive.  In other words, the search terms were already substantially overbroad.

On November 30, Plaintiffs wrote Defendants to request that Defendants go back and run abbreviations for the Defendants' company names as search terms.  This request was made after several of the Defendants' document productions were already complete and the remaining Defendants were finalizing their productions.  Defendants declined this request because Plaintiffs had entered into agreements with Defendants regarding search terms and, in reliance on that agreement, Defendants then ran the search terms Plaintiffs provided to Defendants and produced documents to Plaintiffs.  Moreover, some Defendants, like Guitar Center, had already produced documents using the abbreviations Plaintiffs are now requesting when Plaintiffs negotiated the final search terms with them, and thus Plaintiffs cannot in good faith claim they did not know about these abbreviations.   While some Defendants do on occasion use "GC" for Guitar Center, Plaintiffs agreed during the negotiating sessions with some manufacturing Defendants that "Guitar Center" would not be searched, since that search would produce a voluminous number of unresponsive documents as Guitar Center is the largest customer of the manufacturing Defendants and any relevant documents would be picked up by the use of the other agree-to search terms.  For several Defendants, like Gibson, Hoshino, and Yamaha, Plaintiffs have been informed that these defendants do not commonly use any acronyms for the names of other defendant manufacturers and thus, even setting aside the Plaintiffs' earlier agreements as to search terms, Plaintiffs cannot in good faith persist in asking that the abbreviations be run.

8

Respectfully, the Court should insist that Plaintiffs abide by agreements negotiated in good faith (especially where the Defendants incurred substantial expense *as a result of the agreement* and this is supposed to be a *limited discovery period*).  In addition, courts should be hesitant to second guess agreements as to search terms:

> The preferable method to reduce challenges [to the choice of search methodology] - advocated by the proponents of the 2006 Federal Rules Amendments and experienced practitioners - is for a full and transparent discussion among counsel of the search terminology. Where the parties are in agreement on the method and a reasonable explanation can be provided, it is unlikely that a court will second-guess the process.

The Sedona Conference Best Practices Commentary on the Use of Search and Information Retrieval Methods in E-Discovery, 8 Sedona Conf. J. 189, 204  (Fall 2007).  If the plaintiffs truly believe that additional searches should be run in this limited discovery period, they should bear the cost of running the searches and conducting the review.

## ISSUE NO. 3:

Plaintiffs request that each defendant produce all documents that reflect the terms and effective dates of any MAP policy in effect at any time between January 1, 2004 and July 31, 2008.  This request was initially stated in Plaintiffs First Set of Requests for Production of Documents to NAMM as request No. 3 and to Fender, Kaman, Hoshino, Gibson, and Guitar Center as request No. 4 as "All documents that reflect the terms and effective dates of any MAPP."

## DEFENDANTS' RESPONSE REGARDING ISSUE NO. 3:

Defendants object to this  request because it is beyond the scope of Judge Burns' August 22, 2011 order, it is inconsistent with the prior agreement on the scope of discovery negotiated by the parties, and it is untimely and unduly burdensome.

## PLAINTIFFS' REASONS WHY MAP POLICIES SHOULD BE PRODUCED:

In their requests to produce documents, Plaintiffs asked that each Defendant produce all documents that reflect the terms and effective dates of any MAP policy.  Because MAPs are the mechanisms by which Plaintiffs allege Defendants implemented their conspiracy, Plaintiffs interpret Judge Burns' Order as encompassing the MAPs. Similar terms and conditions and simultaneous policy

9

1  amendments by multiple Defendants may constitute circumstantial evidence of the private meetings

2  alleged in the complaint and what was said and agreed to at those meetings.  The FTC, for instance, has

3  cited similarities across MAP policies as strong evidence of anticompetitive behavior in the compact

4  disc industry.

5          All defendants initially refused to provide MAP policies (unless otherwise responsive to another

6  request).  Two defendants, however, ultimately agreed to provide documents referencing changes to

7  MAP policies, which resulted in the production of some policies.  Review of those few MAP policies

8  has reinforced Plaintiffs' view that these materials are highly relevant to the conspiracy allegations,

9  provide circumstantial evidence of Defendants' anticompetitive conduct, and fall well within the scope

10  of Judge Burns' Order permitting limited discovery to support Plaintiffs' allegations.

11  **DEFENDANTS' BASIS FOR THEIR OBJECTIONS TO PRODUCING MAP POLICIES:**

12          This request is beyond the scope of Judge Burns' order, which states that "[d]iscovery should be

13  limited to who attended or participated in meetings alleged in the amended consolidated complaint and

14  what was said or agreed to there."  (Dkt. No. 133 at 13).  MAP policies are discussed in Judge Burns'

15  order but the order does not permit discovery of the terms of the manufacturer defendants' MAP

16  policies.  Further, although outside the scope of the Court's order, the parties met and conferred in good

17  faith and agreed that if the word search described above returned a non-privileged document in existence

18  reflecting a discussion with a defendant about the terms or effective dates of a MAP policy for a relevant

19  product, and the discussion took place at one of the relevant NAMM shows, it would be produced.  The

20  parties agreed as to what types of documents would be produced.  After relying on this agreement,

21  defendants completed their document productions, only to have plaintiffs back out of the agreement and

22  request more documents.

23

24  //

25  //

26  //

27  //

28
JOINT DISCOVERY CONFERENCE STATEMENT
Case No. 09-md-02121-LAB-POR

1  DATED:  December 15, 2011           **GIRARD GIBBS LLP**

2                                      By: ___/s/ Elizabeth C. Pritzker___

3                                      601 California Street, 14th Floor
4                                      San Francisco, CA 94108
                                       Telephone: (415) 981-4800
5                                      Facsimile: (415) 981-4846

6                                      Lead Liaison Counsel for Plaintiffs

7  DATED:  December 15, 2011           **LATHAM & WATKINS LLP**

8                                      By: ___/s/ Brian Berry_____

9                                      505 Montgomery Street, Suite 2000
10                                     San Francisco, California 94111-6538
                                       Telephone: (415) 395-8157
11                                     Facsimile: (415) 395-8095

12                                     Attorneys for Defendant Guitar Center, Inc.

13

14 DATED:  December 15, 2011           **BAKER BOTTS LLP**

15                                     By: ___/s/ Stephen Weissman_____

16                                     **The Warner**
17                                     1299 Pennsylvania Avenue, NW
                                       Washington, DC 20004-2402
18                                     Telephone: (202) 639-7700
                                       Facsimile: (202) 639-7890
19
20                                     Attorneys for Defendant National Association of
                                       Music Merchants, Inc.

21 DATED:  December 15, 2011           **ECKERT SEAMANS CHERIN**
22                                     **& MELLOTT LLP**

23                                     By: ___/s/ Keith E. Smith_____

24                                     Two Liberty Place
25                                     50 South 16th Street, 22nd Floor
                                       Philadelphia, PA 19102
26                                     Telephone: (215) 851-8400
                                       Facsimile: (215) 851-8383

27

28
                                     11

1                     Attorneys for Defendant Hoshino (U.S.A.), Inc.

2  DATED:   December 15, 2011       **BRYAN CAVE LLP**

3                     By:   __/s/ J. Alex Grimsley__

4                     One Renaissance Square
                      Two North Central Avenue, Suite 2200

5                     Phoenix, Arizona 85004-4406
                      Telephone: (602) 364-7000

6                     Facsimile: (602) 364-7070

7                     Attorneys for Defendants Fender Musical
                      Instruments Corp. and Kaman Music Corp. (now

8                     known as KMC Music, Inc.)

9  DATED:   December 15, 2011       **RILEY WARNOCK & JACOBSON, PLC**

10

11                    By:   __/s/ Tim Harvey__

12                    1906 West End Avenue
                      Nashville, Tennessee 37203

13                    Telephone: (615) 320-3700
                      Facsimile: (615) 320-3737

14

15                    Attorneys for Defendant Gibson Guitar Corp.

16 DATED:   December 15, 2011       **CROWELL & MORING LLP**

17                    By:   __/s/ Daniel A. Sasse__

18                    3 Park Plaza
                      Irvine, California 9264T

19                    Telephone: (949) 263-8400
                      Facsimile: (949) 263-8414

20

21                    Attorneys for Defendant Yamaha Corp. of America

22

23

24

25

26

27

28

JOINT DISCOVERY CONFERENCE STATEMENT
Case No. 09-md-02121-LAB-POR

**ECF FILER'S ATTESTATION**

I, Elizabeth C. Pritzker, as the e-filing counsel, attest that concurrence in filing this document has been obtained from Daniel A. Sasse, Tim Harvey, J. Alex Grimsley, Stephen Weissman, Brian Berry and Keith E. Smith.  I will maintain a record of the concurrence for subsequent production to the Court if so ordered or for inspection upon request by a party until one year after final resolution of the action.

Dated:  December 15, 2011                              By:  ___/s/ Elizabeth E. Pritzker___

JOINT DISCOVERY CONFERENCE STATEMENT
Case No. 09-md-02121-LAB-POR

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on December 15, 2011 I caused the foregoing to be electronically filed with

3  the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4  addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing

5  document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants

6  indicated on the Manual Notice List.

7      I certify under penalty of perjury under the laws of the United States of America that the

8  foregoing is true and correct.  Executed on December 15, 2011.

9                           _/s/    Elizabeth C. Pritzker_____

10                              Elizabeth C. Prtizker

11                          GIRARD GIBBS LLP
                            601 California Street, 14th Floor
12                          San Francisco, CA 94108
                            Telephone:  (415) 981-4800
13                          Facsimile:  (415) 981-4846

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28