1  Daniel A. Sasse (State Bar No. 236234)
     dsasse@crowell.com
2  Chahira Solh (State Bar No. 248985)
     csolh@crowell.com
3  CROWELL & MORING LLP
   3 Park Plaza, 20th Floor
4  Irvine, California  92614-8505
   Telephone:    (949) 263-8400
5  Facsimile:    (949) 263-8414

6  Attorneys for Defendant
   YAMAHA CORPORATION OF AMERICA

7  [ADDITIONAL COUNSEL AND PARTIES APPEAR ON SIGNATURE PAGE]

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| IN RE MUSICAL INSTRUMENTS AND EQUIPMENT ANTITRUST LITIGATION | CASE No. 3:09-md-02121-LAB-POR (and related cases) <br><br> MDL No. 2121 <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES REGARDING DISCOVERY ISSUES** <br><br> **DISCOVERY MATTER** <br><br> Date:  December 22, 2011 <br> Time:  10:00 a.m. <br> Judge:  Hon. Louisa S. Porter |
|---|---|

After having previously negotiated a resolution to each of these disputes, Plaintiffs now appear to be focused on a new strategy of creating disputes to either improperly expand the scope of Judge Burns' Order of August 22, 2011 or as a way of delaying this matter.  Defendants respectfully submit that the Court should deny all of Plaintiffs' requests.

## I. There is No Basis for Another Extension of the Discovery Deadline

Plaintiffs' motion for another extension of time, until February 1, 2012, to engage in further discovery against all of the Defendants should be denied.  There is no basis for extending the discovery deadline, which already has been extended once by the Court, upon stipulation between the parties. (*See* Dkt. No. # 153 (extending discovery deadline from December 1, 2011 to December 23, 2011)).  Plaintiffs failed to proceed diligently in pursuing discovery from the Defendants and have had more than ample opportunity to notice and take the depositions they now claim they cannot complete prior to December 23, 2011.  If, however, the Court is inclined to allow any discovery after December 23, 2011, such discovery should not be open-ended; it should be limited to completion of depositions that Plaintiffs already have specifically identified or noticed, but for which the deponent is unavailable to appear prior to the December 23, 2011 deadline.

Plaintiffs must demonstrate "good cause" for another extension of the discovery deadline. *See* Fed. R. Civ. P. 16(b)(4); *Mondares v. Kaiser Foundation Hosp.*, 2011 WL 5374613, at * 1 (S.D. Cal. Nov. 7, 2011) ("Federal Rule of Civil Procedure 16 provides a stringent standard whereby the party who seeks to amend the Court's scheduling order must show 'good cause' why the Court should set aside or extend a discovery deadline."). "Rule 16(b)'s 'good cause' standard primarily concerns the diligence of the party seeking the [extension]." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.  Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.*  Thus, if the party seeking modification was not diligent in his or her discovery requests, the inquiry should

end there and the measure of relief sought from the Court should not be granted. *Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002).

Here, Plaintiffs cannot establish good cause for the proposed enlargement of the discovery period because they failed to act diligently in pursuing the discovery for which they now seek another extension. On August 22, 2011, Judge Burns ordered Plaintiffs to file an amended complaint by no later than September 12, 2011, and established December 1, 2011 as the deadline for limited discovery. *See* Dkt. No. 133 at 12-13. Nevertheless, after requesting a 10-day extension, Plaintiffs did not amend their Complaint until September 22, 2011,[1] and then waited until October 5, 2011—more than six weeks after Judge Burns' issued his August 22, 2011 Order permitting limited discovery—to propound their first discovery request. They then served these requests on all Defendants by regular mail—despite the Joint Discovery Plan's express requirement that all papers should be served electronically.[2]

Under the Federal Rules, Defendants' written responses were due on November 7, 2011, approximately three weeks before the December 1, 2011 discovery deadline established by Judge Burns. Nevertheless, Plaintiffs did not request that Defendants respond in a shortened amount of time, even though they had an opportunity to do so during the October 4, 2011 status conference or at any other time. Instead, Plaintiffs were content to receive written responses to their discovery requests with only a few weeks remaining prior to the December 1, 2011 deadline.

By contrast, Defendants have acted diligently throughout the limited discovery period allowed by Judge Burns. Indeed, in an effort to expedite their responses, ***Defendants*** contacted Plaintiffs (not the other way around) almost two weeks prior to the November 7, 2011 return date for their written responses, to discuss search terms and other aspects of Plaintiffs' discovery requests. *See* Ex. 1, attached hereto. Plaintiffs began receiving documents from Defendants on a

---

[1]  Defendants did not oppose Plaintiffs' request for an extension of the September 12, 2011 deadline for Plaintiffs to file an amended complaint on the express condition that such "requested extension, if granted, will not modify or amend the case schedule in any way." *See* Dkt. No. 134 at 1.

[2]  *See* Dkt. No. 59 at 7.

rolling basis on November 7, 2011. In particular, NAMM completed its document production on November 7, 2011; Yamaha completed its production on November 23, 2011; Guitar Center produced the bulk of its documents on November 17, 2011, and then completed its production on December 1, 2011; and Fender and KMC completed their productions on December 2, 2011. Likewise, Gibson and Hoshino, both of whom had responded to Plaintiffs' interrogatories on November 7, 2011, produced their document productions on December 9, 2011 and 12, 2011, respectively.[3] With the agreed extension to December 23, 2011, Plaintiffs' time to complete the discovery was not different from the amount of time they allowed themselves when they originally delayed service of any written discovery.

Even though they had been in possession of certain Defendants' entire document productions for weeks—in NAMM's case, over a month—and even though all Defendants had served their answers to interrogatories in early November, Plaintiffs nevertheless waited until last Friday, December 9, 2011, to begin the meet and confer process for scheduling their very first deposition in the case. At the same time, Plaintiffs declared that they would be "not available" for any depositions on nearly half of the remaining business days prior to the December 23, 2011 deadline. *See* Ex. 2, attached hereto. As of the date of this filing, Plaintiffs still have noticed only two depositions—one of a Yamaha representative and one of a NAMM representative—and have just begun to attempt to schedule another seven depositions.

Against this record, there is no good cause for Plaintiffs' instant request for an extension of the discovery deadline as to all Defendants until February 1, 2012. Plaintiffs' only purported justification for subjecting all Defendants to another five weeks of discovery is that they did not receive the last of the Defendants' completed document productions until December 12, 2011. That hardly constitutes the good cause necessary for the blanket five-week extension Plaintiffs now seek. As discussed above, Plaintiffs could and should have completed all discovery by no

---

[3] In an abundance of caution, Gibson is searching a backup drive for one custodian to determine whether it contains any additional responsive information. If any new material is on the drive, Gibson expects the volume to be very small (less than 20 documents) and does not expect it to reveal any material witnesses not already identified.

later than December 23, 2011 had they acted diligently. Not only did Plaintiffs delay filing their amended complaint and then fail to serve any discovery until October 5, 2011, they compounded that delay by failing to ask Defendants, much less move the Court, for expedited discovery responses. The foreseeable result was that Defendants' written discovery responses would be due no earlier than November 7, 2011, a mere three weeks before the original December 1, 2011 discovery deadline. Also, as described below in Part II, Plaintiffs unnecessarily resisted and delayed conferring about the search protocol for electronic documents.

Plaintiffs should not be permitted now to rectify their lack of diligence by subjecting all of the Defendants to another five weeks of discovery, especially given that this amount of time was wasted at the beginning of this process due to the Plaintiffs' inaction. Plaintiffs already have benefitted from one agreed-to extension of the discovery deadline and Defendants already have incurred substantial burdens and costs through their diligent, complete responses. For example, NAMM expended substantial time and resources to complete its discovery responses by November 7, 2011, and it would be wholly unfair to now subject it to another five weeks of discovery. The other Defendants are in similar positions.

Plaintiffs received interrogatory answers and a substantial percentage of total produced documents from the Defendants—including completed productions from NAMM, Yamaha, Guitar Center, Fender, and KMC—many weeks in advance of the current December 23, 2011 deadline. Those interrogatory and document responses were more than sufficient for Plaintiffs to identify many if not all of the individuals they would want to depose and then to schedule those depositions in a timely manner. Moreover, at least some of the potential deponents in this matter were identified by name in the First Amended Class Action Complaint (*see, e.g.,* Dkt. No. 136 ¶¶ 107, 112), which defies any claim that the Plaintiffs needed discovery responses before beginning discussions with the Defendants about any depositions. Plaintiffs could have requested Rule 30(b)(6) depositions at any point in time.

Thus, an extension of the discovery deadline is not supported by good cause. Defendants have already incurred asymmetric burdens, costs (into the hundreds of thousands of dollars), and distraction associated with this limited discovery period, and it would not be fair to subject

Defendants to even more. While that is true for all Defendants, it is especially true for those Defendants who produced complete discovery responses back in November and early December. Plaintiffs' motion for an extension should be denied.[4]

## II. Plaintiffs Should Be Held To Their Negotiated Agreement Regarding Search Terms, Which Did Not Include the Abbreviations at Issue

A court must limit the scope of discovery if a requesting party has had "ample opportunity to obtain the information [it seeks] by discovery in the action" or "if the burden or expense outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(ii), (iii).  or both of these reasons, the Court should deny Plaintiffs' belated request for Defendants to run *additional* search terms through their ESI during this period of "limited" discovery. Defendants respectfully submit that the Court should, instead, insist that Plaintiffs abide by agreements negotiated in good faith regarding search terms (especially since the Defendants have already incurred substantial expense *as a result of the agreement* and this is supposed to be a *limited discovery period*).

Indeed, courts should be hesitant to second-guess agreements as to search terms:

> The preferable method to reduce challenges [to the choice of search methodology] - advocated by the proponents of the 2006 Federal Rules Amendments and experienced practitioners - is for a full and transparent discussion among counsel of the search terminology. Where the parties are in agreement on the method and a reasonable explanation can be provided, it is unlikely that a court will second-guess the process.[5]

The Court should therefore deny Plaintiffs' request that Defendants be compelled to modify the agreements regarding search terms that were reached with Plaintiffs. In light of their respective agreements with Plaintiffs, Defendants should not be compelled to incur the substantial burden and expense of starting the document review process up again.

Generally, Plaintiffs ignore the fact that the terms already searched were selected and agreed upon because they were the terms that were most likely to produce responsive documents.

---

[4] Alternatively, Plaintiffs should be required to show good cause before requesting additional discovery on any Defendant after the current December 23, 2011 discovery deadline.

[5] The Sedona Conference Best Practices Commentary on the Use of Search and Information Retrieval Methods in E-Discovery, 8 Sedona Conf. J. 189, 204 (Fall 2007).

Consistent with Judge Burns' Order, Plaintiffs expressly agreed that some Defendants need only produce documents returned by the search that "refer to a discussion of MAP between [any defendants] during the relevant NAMM events, unless the documents solely concern products other than guitars, amps, or basses." All Defendants searched at least the following terms: "MAP, MAPP, SMAP, minimum advertised pric*, suggested minimum advertised pric*, NAMM, National Association of Music Merchants, global summit, global economic summit or GES." Most Defendants also searched the names of the other Defendants. Collectively, Defendants ran these terms through millions of documents. If a document referenced a discussion of MAP at NAMM between Defendants, it was likely returned by the terms searched.

The new search terms Plaintiffs have proposed would require some Defendants to review tens of thousands of additional documents that would likely yield only a very small number of additional responsive documents. Indeed, the overbroad search terms that the Defendants already ran yielded responsive documents only approximately 1 or 2 percent of the time—and as low as 0.3% and 0.6% for two defendants—and there is no reason to think the abbreviations Plaintiffs are now requesting Defendants to run would generate any better results.

      a. <u>After Having Ample Opportunity To Request That The Abbreviations Be Searched, Plaintiffs Agreed To A Set of Search Terms That Did Not Include These Abbreviations</u>

The undisputed facts overwhelmingly show that Plaintiffs had ample opportunity to previously ask Defendants to add abbreviations for certain Defendants' business names to their search terms, but failed to do so. *See* Fed. R. Civ. P. 26(b)(2)(ii). In fact, the abbreviations for MAP and NAMM were included. Instead, Plaintiffs expressly agreed that Defendants *did not* need to search for these abbreviations, and Plaintiffs must be held to those agreements now. *See* 8 Sedona Conf. J. 189 at 204.

Before Defendants commenced their review of documents, they contacted Plaintiffs to meet and confer regarding the search terms for their ESI that the Defendants were planning to use. Some Defendants even contacted Plaintiffs weeks before their written responses to Plaintiffs' requests for production were due under the FRCP. Defendants did so because they wanted a

settled and mutually agreeable set of search terms at the outset, to avoid the burden and expense of potentially having to re-do any review of their ESI. *See* 8 Sedona Conf. J. at 200 (recommending "producing parties to negotiate with requesting parties in advance to define the parameters of discoverable information" given the "costs and burdens" associated with searching ESI).

On October 31, 2011 and November 1, 2011, Plaintiffs declined Defendants' offer to discuss search terms, noting instead that Defendants should craft suitable searches on their own. Plaintiffs' rationale for refusing to engage in a discussion of search terms was disingenuous: They claimed to be unable to propose any terms because Defendants had not provided them with their companies' organization charts or a list of the types of databases that the respective Defendants possess. Obviously, Plaintiffs did not need this information to propose terms that would target information as it appeared in the standard types of business documents (e.g., emails and word-processing files) that they knew Defendants were searching. Plaintiffs' missed opportunity to augment the Defendants' original search terms is therefore no one's fault but Plaintiffs'.

On November 3, 2011 and 4, 2011, each Defendant (except NAMM, whose discovery responses are not presently at issue) sent a letter to counsel for Plaintiffs detailing the specific searches they were planning to run, which included variations on the key terms "MAP" and "NAMM." *See* Exs. 3-4, attached hereto. In other words, the original terms included the key terms likely to generate discoverable information about discussions of MAP policies at NAMM events. Even with the Defendants' search terms in hand, Plaintiffs did not request any additional search terms or raise any objections. Defendants therefore ran their searches and started reviewing documents.

Weeks later, after several Defendants already had undertaken the substantial burden and expense of reviewing documents—and after several of the Defendants had already substantially or fully completed their productions—Plaintiffs contacted the Defendants to offer input regarding search terms for the first time. Defendants could have reasonably refused this belated effort by Plaintiffs to revisit search terms. Instead, each Defendant negotiated a specific agreement with Plaintiffs to expand the search terms that Defendants had either already run or were in the process

of running; this agreement to expand the terms was part of an overall agreement that resolved all outstanding disputes related to the scope and timing of discovery.  *See* Exs. 5-9, attached hereto.

Plaintiffs were not operating in a vacuum, as they now suggest.  In addition to whatever investigation they conducted prior to filing their complaint, Plaintiffs had substantial document productions from Guitar Center, NAMM, and Yamaha—some of which included documents with abbreviations for Defendants' company names.  In the individually-tailored agreements they reached with each Defendant, Plaintiffs specified a set of final search terms that Defendants would run, which did not contain any abbreviations for the Defendants' company names.

In short, Plaintiffs had ample opportunity to propose the abbreviations presently at issue as search terms but failed to do so until the Defendants had already produced (or begun to produce) documents pursuant to the parties' agreements on search terms and other aspects of the production.  *See* Fed. R. Civ. P. 26(b)(2)(ii).  Plaintiffs should be held to their agreements now. *See*  8 Sedona Conf. J. 189, 204.

### b. Defendants Should Not Be Made To Incur The Burden And Expense of Searching For The Abbreviations

Apart from being an unfair departure from the parties' agreements, requiring Defendants to go back and run the abbreviations through their ESI would also create a substantial burden and expense for the Defendants, which is undue given the paltry number of discoverable documents, if any, that these new search terms would likely yield.  *See* Fed. R. Civ. Proc. 26(b)(iii).  Indeed, the search terms that the Defendants have already run were substantially overbroad, as demonstrated by the fact that they overwhelmingly returned documents that were not responsive to Plaintiffs' requests.  For instance, for Fender and KMC, the search parameters they agreed to run netted a total of 125,427 pages of documents.  Counsel spent in excess of 300 hours to review all of these documents, and at the end of the day found that a total of just 785 pages of documents were responsive, which is less that 0.6% of the total number of pages reviewed.  Similarly, less than 0.3% of the documents Yamaha reviewed based on the search terms ultimately proved to be responsive, while less than 2% of the documents Guitar Center reviewed based on the search terms ultimately turned out to be responsive.  The fact that searching these abbreviations will likely yield

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

very few—if any—additional documents must be measured against the enormous burden and expense that this would create for certain Defendants.

### III. Minimum Advertised Price Policies are Beyond the Scope of the Court's Order and Plaintiffs Should Be Held to Their Negotiated Agreement regarding Minimum Advertised Policies

Plaintiffs' document request asking for all Minimum Advertised Price (MAP) policies is far beyond the scope of Judge Burns' Order.[6] The Court's Order states: "Discovery should be limited to who attended or participated in meetings alleged in the amended consolidated complaint and what was said or agreed to there." (Dkt. No. 133 at 13). The Order clearly does not contemplate the open-ended production of MAP policies. Indeed, Plaintiffs have never even articulated what fact of consequence the MAP policies make more or less probable.

Further, over nearly two months, Defendants negotiated with Plaintiffs to see if they could reach agreement on this request. After a good faith negotiation, the parties agreed to narrow the scope of the request. The parties agreed that if the word search described above returned a non-privileged document reflecting a private meeting that occurred between defendants about the terms or effective dates of a MAP policy for a relevant product, and the discussion took place at one of the relevant NAMM shows, it would be produced. This search actually goes beyond the scope of what was contemplated by Judge Burns' Order and would not have been conducted but for the parties' agreement. The MAP policies themselves, to the extent they exist, have nothing to do with "any meetings alleged in the amended consolidated complaint," and as Judge Porter suggested in the parties' first status conference, this request goes far beyond the scope of anything contemplated by Judge Burns' Order.

Relying on this agreement, Defendants incurred significant expense by searching and reviewing thousands of documents to determine if there were any which were responsive under the

---

[6] Plaintiffs' actual request was for "[a]ll documents that reflect the terms and effective dates of any MAPP." On its face, the request for all such documents is overboard, even if Judge Burns had allowed discovery of the policies themselves (which he did not).

parameters agreed upon.  After receiving most of the Defendants' productions, Plaintiffs decided to renege on their agreement.  In an effort to support their arguments in favor of an extension, Plaintiffs are trying move the goal posts at the end of the game.  It would be unfair to burden Defendants with further expense by reviewing additional documents to locate MAP policies, which are clearly outside the scope of the Court's Order.  The Court should deny Plaintiffs' motion to compel MAP Policies at this late hour.

DATED:  December 15, 2011

**CROWELL & MORING LLP**

By: */s/  Daniel A. Sasse*
Daniel A. Sasse
Chahira Solh
3 Park Plaza, 20th Floor
Irvine, California  92614-8505
Telephone:     (949) 263-8400
Facsimile:      (949) 263-8414

Attorneys for Defendant Yamaha Corporation of America

DATED:  December 15, 2011

**LATHAM & WATKINS LLP**

By:    */s/ Christopher S. Yates*

Margaret M. Zwisler, Esq.
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-2201
Telephone:     (202) 637-1092
Facsimile:      (202) 637-2201
Margaret.Zwisler@lw.com

Christopher S. Yates, Esq.
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone:     (415) 395-8157
Facsimile:      (415) 395-8095
Chris.yates@lw.com

Attorneys for Defendant Guitar Center, Inc.

| | |
|---|---|
| DATED:  December 15, 2011 | **BAKER BOTTS LLP**<br><br>By:   */s/ Paul C. Cuomo*<br><br>Paul C. Cuomo, Esq.<br>Stephen Weissman, Esq.<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004-2402<br>Telephone:   (202) 639-7700<br>Facsimile:    (202) 639-7890<br>Paul.cuomo@bakerbotts.com<br>Stephen.weissman@bakerbotts.com<br><br>Attorneys for Defendant National Association of Music Merchants, Inc. |
| DATED:   December 15, 2011 | **ECKERT SEAMANS CHERIN & MELLOTT LLP**<br><br>By:   */s/ Keith E. Smith*<br><br>Charles F. Forer, Esq.<br>Neil G. Epstein, Esq.<br>Keith E. Smith, Esq.<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Telephone:   (215) 851-8400<br>Facsimile:    (215) 851-8383<br>cforer@eckertseamans.com<br>nepstein@eckertseamans.com<br>ksmith@eckertseamans.com<br><br>Attorneys for Defendant Hoshino (U.S.A.), Inc. |

| | |
|---|---|
| DATED:  December 15, 2011 | **BRYAN CAVE LLP** |
| | By:  */s/ J. Alex Grimsley* |
| | Lawrence G. Scarborough, Esq.<br>J. Alex Grimsley, Esq.<br>Two North Central Avenue, Suite 2200<br>Phoenix, AZ 85004-4406<br>Telephone:  (602) 364-7000<br>Facsimile:  (602) 364-7070<br>lgscarborough@bryancave.com<br>jagrimsley@bryancave.com |
| | Attorneys for Defendants Fender Musical Instruments Corp. and KMC Music, Inc. |
| DATED:  December 15, 2011 | **RILEY WARNOCK & JACOBSON, PLC** |
| | By:  */s/ Tim Harvey* |
| | Steven A. Riley, Esq.<br>John Peterson, Esq.<br>Tim Harvey, Esq.<br>1906 West End Avenue<br>Nashville, TN 37203<br>Telephone:  (615) 320-3700<br>Facsimile:  (615) 320-3737<br>sriley@rwjplc.com<br>jpeterson@rwjplc.com<br>tharvey@rwjplc.com |
| | Attorneys for Defendant Gibson Guitar Corp. |

**ECF ATTESTATION**

The filing attorney attests that he has obtained concurrence regarding the filing of this document from the signatories to this document.

DATED: December 15, 2011             */s/ Daniel A. Sasse*
                                      Daniel A. Sasse

**CERTIFICATE OF SERVICE**

I, Daniel A. Sasse, hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 15th day of December, 2011, with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served by electronic mail and/or first class mail on the same date.

                                            */s/ Daniel A. Sasse*
                                            Daniel A. Sasse

DCACTIVE-16990496.1