# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: National Association of Music Merchants, Musical Instruments and Equipment Antitrust Litigation | MDL No. 2121<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' DISCOVERY MOTION**<br><br>**[ECF No. 156]** |

## I. INTRODUCTION

On December 15, 2011, the parties filed a Joint Discovery Motion. (ECF No. 156.) Plaintiffs request the following: (1) an extension of the limited discovery deadline from December 23, 2011 to February 3, 2012; (2) a requirement that each Defendant run document searches containing abbreviations and acronyms for agreed-upon search terms concepts;[1] and (3) a requirement that each Defendant produce all documents that reflect the terms and effective dates of any minimum advertised price ("MAP") policy in effect at any time between January 1, 2004 and July 31, 2008.

Upon thorough review of the parties' moving papers and relevant law, the Court hereby **GRANTS in part** and **DENIES in part** Plaintiffs' requests.

///

///

---

[1] This dispute exists with all Defendants, except Defendant National Association of Music Merchants ("NAMM").

## II. DISCUSSION

### 1. Extension of Discovery Deadline

Plaintiffs contend the discovery deadline currently set for December 23, 2011 should be extended to February 1, 2012, so that Plaintiffs can complete their document review and conduct targeted depositions of key witnesses. First, Plaintiffs contend they have been diligent in pursuing discovery afforded by Judge Burns' order. (ECF No. 133.) Second, Plaintiffs contend Defendants' production delays after the parties filed their stipulation to extend the original discovery deadline of December 1, 2011 have made it difficult for Plaintiffs to review the late-arriving productions, analyze the interaction of all seven productions, effectively identify appropriate deponents, and schedule and complete meaningful depositions by December 23, 2011. (ECF No. 156 at 3.) Finally, Plaintiffs represent that a dispute arose during the December 15, 2011 deposition of Yamaha Corporation of America Senior Vice-President Tom Sumner's deposition about the scope of Judge Burns' order regarding discovery of who attended or participated in meetings at the trade shows alleged in the amended consolidated complaint, thereby further supporting the need for an extension of the discovery deadline. *Id.* at 4. At this point, Plaintiffs have reached out to all Defendants to arrange a total of 10 depositions, but do not believe these depositions can be completed before the current December 23, 2011 discovery deadline.

Defendants oppose the extension of the discovery deadline because they contend Plaintiffs were not diligent in pursuing discovery from Defendants and, in any event, have been in possession of Defendants' complete interrogatory answers as well as substantial document productions for many weeks prior to the December 23, 2011 deadline. (ECF No. 156 at 5.) Nevertheless, Defendants contend Plaintiffs failed to request their first deposition until December 9, 2011. *Id.* Further, Defendants contend there is no legal basis for Plaintiffs' position that they could not begin an efficient deposition process until they received the last document from the last Defendant who produced documents. *Id.* Despite Plaintiffs' lack of diligence, Defendants do not object to Plaintiffs taking, after December 23, 2011, depositions that have been noticed or otherwise identified by Plaintiffs, but for which the deponent is unavailable to appear prior to the December 23 deadline. *Id.*

///

Based on Defendants' non-opposition to Plaintiffs taking already-identified depositions after the December 23, 2011 deadline, and good cause appearing, the Court hereby **GRANTS** Plaintiffs' request to extend the discovery deadline to **February 1, 2012**. However, any further discovery conducted after December 23, 2011 is limited to the completion of the 10 depositions Plaintiffs have already specifically identified, without further court order. If further depositions appear necessary, counsel shall contact the Court immediately.

**2.   Document Searches Containing Abbreviations and Acronyms**

Second, Plaintiffs request that each Defendant run document searches containing abbreviations and acronyms for agreed-upon search terms.

Prior to serving their discovery responses, Defendants notified Plaintiff they intended to use search term queries to search electronically-stored information ("ESI") in their possession, and asked Plaintiffs to provide search terms. Plaintiffs contend they were unable to meaningfully assist Defendants in fashioning an appropriate search methodology in light of Defendants' unwillingness to provide them relevant information. (ECF No. 156-1 at 5-6.) After Defendants provided Plaintiffs with their chosen search terms shortly before serving their discovery responses, Plaintiffs realized the proposed terms were too restrictive and unlikely to capture some highly relevant documents. *Id.* at 6. Therefore, Plaintiffs agreed with Defendants to modify the proposed search strings, and agreed that Defendants would employ search terms that included other Defendant names in an effort to capture Defendant-to-Defendant communications. *Id.* As Defendants produced documents in late November and early December, Plaintiffs contend they realized certain Defendants used abbreviations or acronyms in the internal communications when referring to other Defendants. Thus, Plaintiffs contend Defendants' search for Defendant names did not capture the agreed-upon universe of responsive documents because the commonly used abbreviations were not included in Defendants' searches.

Based thereon, Plaintiffs request each Defendant to (i) identify abbreviations or acronyms commonly used within the Defendant corporation for any of the agreed-upon search terms, or affirmatively state that no abbreviations or acronyms are commonly used; (ii) state whether the Defendant included all identified abbreviations and acronyms in its search for responsive documents; and (iii) if abbreviations and acronyms were identified but not included in Defendant's search, re-run

its search and produce new responsive documents. (ECF No. 156-1.)

Defendants contend the Court should deny Plaintiffs' request compelling Defendants to modify the agreements regarding search terms that were reached with Plaintiffs, especially since Defendants have already incurred substantial expense as a result of the agreement during a limited discovery period. (ECF No. 157 at 6.) First, Defendants contend Plaintiffs ignore the fact that the terms already searched were selected and agreed upon because they were the terms most likely to produce responsive documents.[2] *Id.* The new search terms Plaintiffs have proposed would require some Defendants to review tens of thousands of additional documents that would likely yield only a very small number of additional responsive documents. Second, Defendants contend Plaintiff had ample opportunity to previously ask Defendants to add abbreviations for certain Defendants' business names to their search terms, but failed to do so. *Id.* at 7. Before Defendants commenced their review of documents, they contacted Plaintiffs to meet and confer regarding the search terms for their ESI, a request Plaintiffs declined. *Id.* at 7-8. Subsequently, Defendants sent a letter to Plaintiffs detailing the specific searches, and Plaintiffs did not raise any objections. *Id.* at 8. Defendants therefore ran their searches and started reviewing documents. *Id.* Weeks later (after Defendants had undertaken the substantial burden and expense of reviewing documents), Plaintiffs contacted Defendants to discuss the search terms and each Defendant negotiated an agreement with Plaintiffs to expand the search terms. Therefore, Plaintiffs had ample opportunity to propose the abbreviations presently at issue as search terms but failed to do so until after Defendants had already produced documents pursuant to the parties' agreements. *Id.* at 9. Defendants contend they should not now be made to incur the burden and expense of searching for the abbreviations. *Id.*

Specifically with regard to electronic discovery, Courts have held that effective search terms cannot be identified in an information vacuum and that a party's "human knowledge" should be utilized to craft keyword searches that are responsive to the "inherent malleability and ambiguity of

---

[2] All Defendants searched at least the following terms: "MAP, MAPP, SMAP, minimum advertised pric*, suggested minimum advertised pric*, NAMM, National Association of Music Merchants, global summit, global economic summit or GES." (ECF No. 157 at 7.) Most Defendants also searched the names of the other Defendants. *Id.* Based thereon, Defendants contend if a document referenced a discussion of MAP at NAMM between Defendants, it was likely returned by the terms searched. *Id.*

spoken and written English." *See The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery*, 8 Sedona Conf. J. 189, 201, 209 (Fall 2007). "[W]hile key word searching is a recognized method to winnow relevant documents from large repositories, use of this technique must be a cooperative and informed process." *In re Seroquel Products Liability Litigation*, 244 F.R.D. 650, 662 (M.D. Fla. 2007). Therefore, "[t]he preferable method to reduce challenges [to the choice of search methodology]- advocated by the proponents of the 2006 Federal Rules Amendments and experiences practitioners, is for a full and transparent discussion among counsel of the search terminology. Where the parties are in agreement on the method and a reasonable explanation can be provided, it is unlikely that a court will second-guess the process." *The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery*, 8 Sedona Conf. J. 189, 204 (Fall 2007). More generally, a court must limit the scope of discovery if a requesting party has had "ample opportunity to obtain the information by discovery in the action," or "if the burden or expense outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(ii), (iii).

Here, the Court finds Plaintiffs had ample opportunity to obtain discovery regarding abbreviations and acronyms of Defendant companies, and the burden or expense to Defendants in having to comply with Plaintiffs' request regarding abbreviations and acronyms outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(2)(ii),(iii). First, Plaintiffs had two separate opportunities to suggest that Defendants search for abbreviations and acronyms of the Defendant companies; initially, before Defendants produced documents; and second, during negotiations between the parties on agreed-upon expanded search terms. In the spirit of the conclusions made at the Sedona Conference, and in light of the transparent discussion among counsel of the search terminology and subsequent agreement on the search method, the Court finds it unreasonable for Defendant to re-search documents they have already searched and produced. *See The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery*, 8 Sedona Conf. J. 189, 204 (Fall 2007).

Second, after meeting and conferring with Plaintiffs, and relying on their agreement with Plaintiffs regarding search terms, Defendants have already searched and produced a significant

number of documents, thereby incurring significant expenses during this limited discovery period. Further, as articulated by Defendants, the new search terms Plaintiffs have proposed would require some Defendants to review tens of thousands of additional documents that would likely yield only a very small number of additional responsive documents. Therefore, the Court finds a re-search of documents Defendants have already searched and produced is overly burdensome.

Based thereon, the Court hereby **DENIES** Plaintiffs' request that each Defendant run document searches containing abbreviations and acronyms for agreed-upon search terms concepts. However, to the extent Plaintiffs are willing to bear the cost of running the searches and conducting the review in their request, cost shifting shall apply and the Court shall permit a further search of Defendants Yamaha, Fender, and Kaman's files, as well as Defendant Gibson's files solely for the acronym "GC."[3]

### 3.   Production of MAP Policies

Third, Plaintiffs request that each Defendant produce all documents that reflect the terms and effective dates of any MAP policy in effect at any time between January 1, 2004, and July 31, 2008. Because MAPs are mechanisms by which Plaintiffs allege Defendants implemented their conspiracy to control musical instrument pricing, Plaintiffs interpret Judge Burns' order as encompassing MAPs. (ECF No. 156-1 at 8-9.) Plaintiffs assert that similar terms and conditions and simultaneous policy amendments by multiple Defendants may constitute circumstantial evidence of the private meetings alleged in the complaint and what was said and agreed to at those meetings. *Id.* at 8.

Defendants contend Plaintiffs' request is beyond the scope of Judge Burns' August 22, 2011 order, is inconsistent with the prior agreement on the scope of the discovery negotiated by the parties, is untimely and unduly burdensome. (ECF No. 157-10-11.) Over two months ago, Defendants

---

[3] Here, Defendant NAMM confirmed it had employed appropriate abbreviations and acronyms in its document search. (ECF No. 156-1 at 7.) Defendant Guitar Center stated it did not and would not, though test runs with "GMI," "FMIC," "KMC," and "YCA," did not return responsive documents. *Id.* Defendant Hoshino also stated it did not but further represented that no abbreviations or acronyms were commonly used within the company for Gibson, Fender, or Yamaha, and "KMC" had not appeared in any documents. *Id.* Defendant Gibson represented that no abbreviations or acronyms were commonly used within the company for Hoshino, Fender, Kaman, or Yamaha, but that "GC" is commonly used for "Guitar Center," but GC was not employed as a search term. Three Defendants (Yamaha, Fender and Kaman), stated they did not and would not employ appropriate abbreviations and acronyms in its document search. *Id.* Therefore, the only Defendants relevant to this inquiry are Yamaha, Fender, and Kaman, and Gibson solely for the acronym "GC."

contend they negotiated with Plaintiffs to narrow the scope of this request, and the parties agreed that if the word search described in the previous section returned a non-privileged document reflecting a private meeting that occurred between Defendants about the terms or effective dates of a MAP policy for a relevant product, and the discussion took place at one of the relevant NAMM shows, it would be produced. *Id.* at 10. Therefore, Defendants contend they incurred significant expense in complying with this agreement, and it would be unfair to burden Defendants with further expense by reviewing additional documents to locate MAP policies. *Id.*

Judge Burns' Order states: "Discovery should be limited to who attended or participated in meetings alleged in the amended consolidated complaint and what was said or agreed to there." (ECF No. 133 at 13.) The Order did not contemplate the open-ended production of MAP policies. Further, the parties reached a compromise as to the scope of Judge Burns' order, which Defendants subsequently relied upon in their review and production of responsive documents. Nevertheless, all Defendants searched at least the following terms: "MAP, MAPP, SMAP, minimum advertised pric*, suggested minimum advertised pric*, NAMM, National Association of Music Merchants, global summit, global economic summit or GES." (ECF No. 157 at 7.) Based thereon, Defendants contend if a document referenced a discussion of MAP at NAMM between Defendants, it was likely returned by the terms searched. *Id.* Therefore, the Court finds Plaintiffs should have received discovery regarding relevant MAP policies. Accordingly, the Court hereby **DENIES** Plaintiffs' request that each Defendant produce all documents that reflect the terms and effective dates of any MAP policy in effect at any time between January 1, 2004, and July 31, 2008.

### III. CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED:

1. The Court hereby **GRANTS** Plaintiff's request for an extension of the discovery deadline to **February 1, 2012**. However, any further discovery conducted after December 23, 2011 is limited to the completion of the 10 depositions Plaintiffs have already specifically identified, without further court order. If further depositions appear necessary, counsel shall contact the Court immediately.

///

1  ///

2        2.    The Court hereby **DENIES** Plaintiffs' request that each Defendant run document searches containing abbreviations and acronyms for agreed-upon search terms concepts. However, to the extent Plaintiffs are willing to bear the cost of running the searches and conducting the review in their request, cost shifting shall apply and the Court shall permit a further search of Defendants Yamaha, Fender, and Kaman's files, as well as Defendant Gibson's files solely for the acronym "GC."

      3.    The Court hereby **DENIES** Plaintiffs' request that each Defendant produce all documents that reflect the terms and effective dates of any MAP policy in effect at any time between January 1, 2004, and July 31, 2008.

      4.    Based on both parties' representations that they have not met and conferred on the issue of the scope of Judge Burns' order with respect to discovery that may be obtained from Defendants regarding who attended or participated in meetings at the trade shows alleged in the amended consolidated complaint, the Court shall not address this issue in this Order. If a discovery dispute remains as to this issue after the parties have met and conferred, counsel shall <u>jointly</u> contact the Court to receive a date for a Discovery Conference.

**IT IS SO ORDERED**.

DATED: December 19, 2011

_____
LOUISA S PORTER
United States Magistrate Judge